OPINION
{¶ 1} Defendant-appellant, David K. Dye, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty pursuant to a no contest plea to aggravated vehicular homicide and operating a motor vehicle while under the influence of alcohol. Defendant assigns a single error:
 {¶ 2} "The trial court errs as a matter of law when it sentences the accused to a term of imprisonment longer than the statutory maximum, when it improperly implements the `worst form of the offense' classification under R.C. 2929.14(C)."
 {¶ 3} Because the trial court did not err in imposing the maximum sentence, we affirm.
 {¶ 4} By indictment filed on November 15, 2001, defendant was charged with one count of aggravated vehicular homicide, a felony of the second degree under R.C. 2903.06, one count of aggravated vehicular homicide, a felony of the third degree under R.C. 2903.06, and one count of operating a motor vehicle while under the influence of alcohol ("OMVI") in violation of R.C. 4511.19.
 {¶ 5} On March 27, 2002, defendant entered a no contest plea to the second degree felony charge of aggravated vehicular homicide and to the first degree misdemeanor count of OMVI. The prosecution applied for and was granted a nolle prosequi on the one remaining count. By judgment entry filed on May 21, 2002, the court imposed a maximum sentence of eight years on the aggravated vehicular homicide charge, and a maximum of six months on the OMVI.
 {¶ 6} In his single assignment of error, defendant does not challenge the trial court's conclusion that a prison term is mandatory under R.C. 2903.06. Nor does defendant challenge the trial court's ability to sentence defendant to a maximum of six months on the OMVI and to require defendant to serve the six months consecutively to whatever prison term is imposed for the aggravated vehicular homicide. Rather, defendant notes former R.C. 2929.14(C) provides specified bases for imposing a maximum prison term, providing that "the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section." Here, the trial court imposed a maximum sentence because defendant committed "the worst form of the offense."
 {¶ 7} Defendant asserts the trial court as a matter of law could not conclude defendant committed "the worst form of the offense." Defendant's contention is grounded in the language of R.C.2903.06(B)(1)(a), which states that, "[e]xcept as otherwise provided in this division, aggravated vehicular homicide committed in violation of division (A)(1) of this section is a felony of the second degree. Aggravated vehicular homicide committed in violation of division (A)(1) of this section is a felony of the first degree if, at the time of the offense, the offender was driving under a suspension imposed under Chapter 4507. or any other provision of the Revised Code or if the offender previously has been convicted of or pleaded guilty to a violation of this section; any traffic-related homicide, manslaughter, or assault offense; three prior violations of section 4511.19 of the Revised Code or of a substantially equivalent municipal ordinance within the previous six years; or a second or subsequent felony violation of division (A) of section 4511.19 of the Revised Code."
 {¶ 8} More particularly, defendant asserts that, as a matter of law, a second degree felony aggravated vehicular homicide conviction may never be the worst form of the offense because R.C. 2903.06 specifically delineates those factors which make aggravated vehicular homicide a felony of the first degree and, according to defendant, the statutorily prescribed worst form of the offense. According to defendant, although one of the other three factors may justify a maximum sentence, "the worst form of the offense" factor will never support a maximum sentence for a second degree felony conviction under R.C. 2903.06.
 {¶ 9} "Statutory law does not, nor can it, exactly define the `worst form of the offense.' To determine whether an offender committed the worst form of an offense, the trial court should consider the totality of the circumstances." State v. Raphael (Mar. 24, 2000), Lake App. No. 98-L-262. In determining whether the offense committed is the worst form of the offense, "it is imperative the court only consider the specific crime committed." Id.
 {¶ 10} Contrary to defendant's contentions, the legislature's enhancement language in R.C. 2903.06 does not preclude a felony of the second degree from being the worst form of the offense. Specifically, defendant's action, though not a first degree felony, may be the most egregious form of a second degree felony aggravated vehicular homicide. Nothing in R.C. 2903.06, or the corresponding sentencing statutes, suggests the enhancement factors that elevate the degree of an offense are also intended to insulate a defendant from a maximum sentence if the enhancement factors are absent. Because the trial court properly concluded it could determine whether defendant's conduct constituted the worst form of a second degree felony aggravated vehicular homicide, we reject defendant's legal contention under R.C. 2903.06 and former2929.14(C). Cf. State v. Wilson (May 26, 2000), Lake App. No. 98-L-267. ("The court must consider the factors that make the offense more serious, not factors that might result in a more serious offense").
 {¶ 11} The remaining issue is whether the facts before the trial court support the trial court's determination that defendant, in fact, committed the worst form of aggravated vehicular homicide charged as a felony of the second degree. According to the facts presented in connection with defendant's no contest plea, on November 5, 2001, Trooper Frank Vazquez had pulled a speeding car over to the northbound berm of Interstate 270 at approximately 9:15 p.m. As the trooper was attempting to discuss the incident with the driver, defendant was proceeding northbound on 270, returning from a business trip to Indiana. Defendant drove completely off the road, traveled the berm portion for a substantial distance, and rear-ended the clearly marked Ohio State Highway Patrol cruiser. In rear-ending the vehicle, defendant forced the vehicle into the trooper, who died from blunt trauma. Defendant was cut from his own vehicle, transported to a hospital facility, and tested for alcohol. The whole blood analysis the highway patrol performed showed a test result of .318 grams percent by weight of blood alcohol, or more than three times the legal amount in Ohio. Defendant had four prior OMVI convictions between the years 1987 and 1995.
 {¶ 12} Inspection of the vehicle defendant was driving revealed a large bottle of Tanqueray gin, along with 7-Up and orange slices. At the hospital, defendant showed no awareness of where he had been or where he was going at the time of the accident, but indicated he had come from a country club and thought he was on State Route 161.
 {¶ 13} The trial court explained its reasons for concluding defendant's conduct was the worst possible form of the offense, noting defendant had caused the death of a state trooper, age 27, who was a peace officer properly performing his "rightful duty" at the time he was struck. (Tr. 21.) The court also noted the victim's young age, his family and young children, and the tragedy his loss represented.
 {¶ 14} The court further observed defendant's blood test was three times the legal limit; it commented that for someone who does not drink regularly, alcohol consumption in that amount would probably either be fatal or render the person comatose. Indeed, the court noted defendant's car contained a 1.75 liter bottle of gin with 7-Up and orange slices: "So this isn't someone who perhaps drank at a social function and then got in his car and drove home. This is someone who was drinking while he was driving." (Tr. 22.)
 {¶ 15} In addition, the trial court pointed to the presentence investigation, where defendant admitted he drinks to get drunk, he has an alcohol problem, and he never really tried to stop. Indeed, the trial court stated: "He admitted that he poured himself two or three drinks and remembered being tired and drunk. So he rolled down the window and turned up the radio." (Tr. 23.)
 {¶ 16} In connection with defendant's continuing alcohol abuse, the trial court specifically noted defendant's failure to take rehabilitative measures following the prior four OMVI convictions, including defendant's failure to complete the substance abuse program he was ordered into after his most recent conviction.
 {¶ 17} On these facts, the trial court could reasonably conclude defendant committed the worst form of a second degree felony aggravated vehicular homicide under R.C. 2903.06. The facts of the accident were aggravated, defendant's prior record of alcohol related offenses was substantial, defendant's drinking at the time of the accident was both excessive and egregious, and defendant's failure to follow through with ordered treatment only intensified his wrong. Accordingly, we overrule defendant's single assignment of error, and affirm the judgment of the trial court.
Judgment affirmed.
BOWMAN and LAZARUS, JJ., concur.